UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | 1:23-cr-29 |
| | ) | |
| v. | ) | Judge McDonough |
| | ) | |
| | ) | Magistrate Judge Lee |
| KEOSHA ANDERSON | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Keosha Anderson, and the defendant's attorney, Keith Davis, have agreed upon the following:

1) The defendant will plead guilty to the following count(s) in the second superseding indictment:

   a) **Count 2:** Conspiracy to Obstruct Justice, to wit: Witness Tampering, in violation of Title 18, United States Code, Sections 1512(k) and 1512(b)(2)(A). The punishment for this offense is as follows: imprisonment of not more than 20 years; supervised release for up to 3 years; fine of up to $250,000; applicable forfeiture; any lawful restitution; and a $100 special assessment.

2) There are no remaining counts against the defendant in the second superseding indictment. The United States agrees to move the Court, at the time of sentencing, to dismiss the counts pending against the defendant in the superseding indictment.

3) The defendant has read the second superseding indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty,

Page 1 of 11

the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

Count 2 (18 U.S.C §§ 1512(k) & 1512(b)(2)(A))

The defendant conspired, or agreed, with one or more persons to:

    a)    knowingly intimidate, threaten, or corruptly persuade another person,

    b)    With the intent to cause or induce any person to withhold testimony;

    c)    From an official proceeding

4) In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    a)    On March 28, 2023, a Grand Jury of the Eastern District of Tennessee at Chattanooga returned an indictment charging Javonte Wynn with being a felon in possession of a firearm on February 1, 2023. A witness, G. K., gave a statement to law enforcement and testified before the Grand Jury regarding Wynn's possession of the firearm in question.

    b)    On the evening of September 23, 2023, G. K. received a telephone call. The female caller identified herself as "Jaquisha," referred to G. K. by name, and told him she knew where he worked. The caller told G. K. it would be in "her cousin's" best interest if he did not appear in court and asked him to contact "the lawyer" to

remove himself as a witness and to meet in person to discuss the case. G. K. recorded a portion of the call.

  c) G. K. reported the call to the FBI. FBI subpoenaed records regarding telephone number. The records revealed the telephone number was a voice-over-internet-protocol number serviced by TextNow. The subscriber was listed as "Pachence Jackson." The investigation revealed co-defendant/co-conspirator Pachence Jackson made the phone call to G. K.

  d) FBI reviewed recorded jail calls and "video visits" made by Javonte Wynn, who was in pre-trial detention at the Bradley County Jail.

  e) During a video visit on September 9, 2023, Javonte Wynn advised Jackson he was sending a letter to his brother, later identified as co-defendant/co-conspirator Ernest Wynn, and that the letter would detail something he needed her (Jackson) to do. Javonte Wynn told Jackson she could ask "Keosha" when "they" get the letter.

  f) During a phone call on September 11, 2023, Javonte Wynn spoke with a relative, discussed his case, and told the relative that he mailed her something and to be sure that "Ernest" reads it. During a call on September 16, 2023, the relative confirmed she received the "kite." Kite is slang for a letter.

  g) During a video visit on September 22, 2023, Javonte Wynn told Jackson, "my brother got that letter."

  h) During a video visit on September 23, 2023, the defendant told Javonte Wynn that "Pachence" texted her "talking about the dude . . . that is lying on you."

Case 1:23-cr-00029-TRM-MJD Document 76 Filed 04/24/24 Page 3 of 11 PageID #: 270

Javonte Wynn told the defendant to be sure to "send that name to Pachence." The defendant replied, "I got you as soon as we get off the phone."

i) As stated in paragraph 4(b), the call to G. K. occurred the evening of September 23, 2023.

j) During two telephone calls the morning of September 24, 2023, the defendant told Javonte Wynn that "homeboy said he ain't got nothing to do with it" and that "the FBI got him from his job." G. K. made these statements to Jackson during the September 23rd phone call. The defendant went on to say, "it came from an unknown number. I did what you told me to do." Later, the defendant read a text message, seemingly from Jackson, recounting the conversation with G. K.

k) Records for the TextNow number utilized by the Jackson showed a text message sent to the defendant the morning of September 24, 2023.

l) In a later call on September 24, 2023, Jackson told Javonte Wynn, "I saw your brother yesterday." Javonte Wynn asked, "who, Ernest?" Jackson replied, "yep." Jackson went on to say, "I talked to dude, though," and recounted portions of the conversation between her (Jackson) and G. K.

m) On November 7, 2023, FBI recovered the "letter" during the execution of a search warrant at Ernest Wynn's residence. The letter contained instructions to contact "the EPB dude" (G. K.) and to tell him "do not come 2 trial or come 2 trial & say he didn't see no gun." Enclosed with the letter were "Bates Stamped" discovery documents provided to Javonte Wynn by the United States.

Page 4 of 11

Case 1:23-cr-00029-TRM-MJD    Document 76    Filed 04/24/24    Page 4 of 11    PageID #: 271

n) During a telephone call on November 8, 2023, the defendant and Javonte Wynn discussed that the "letter" was not supposed to be at Ernest Wynn's residence.

o) The defendant admits that she conspired with others to corruptly persuade G. K., with the intent to cause or induce G. K. to withhold testimony from an official proceeding, that is, the prosecution of Javonte Wynn in the United States District Court for the Eastern District of Tennessee, as charged in Count 2 of the Second Superseding Indictment.

p) These events occurred in the Eastern District of Tennessee.

5) The defendant is pleading guilty because the defendant admits she is in fact guilty. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6) The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

**7) Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a particular provision of the Sentencing Guidelines, namely a 2-level mitigating role adjustment based the defendant's minor role in the criminal activity, pursuant to *United States Sentencing Guideline* § 3B1.2(b), applies to the defendant's sentence.** In the event the

Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

8) Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9) The defendant agrees to pay the special assessment in this case prior to sentencing.

10) Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully

in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11) The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United

States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to claims of prosecutorial misconduct and ineffective assistance of counsel.

    c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12) This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing

Page **9** of **11**

Case 1:23-cr-00029-TRM-MJD    Document 76    Filed 04/24/24    Page 9 of 11    PageID #: 276

to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13) The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

14) This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

{SIGNATURES ON FOLLOWING PAGE}

| | | |
|---|---|---|
| | | FRANCIS M. HAMILTON III<br>UNITED STATES ATTORNEY |
| 4/24/24<br>Date | By: _____ | Kevin T. Brown<br>Assistant United States Attorney |
| 04/23/24<br>Date | _____ | Keosha Anderson<br>Defendant |
| 4/23/24<br>Date | _____ | Keith Davis<br>Defendant's Attorney |

Page 11 of 11